UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL A. MATTUS and the PAUL A. MATTUS AGENCY & SONS, INC. Plaintiffs, | : : : : | 1:11-cv-681 |
| v. | : : | |
| THE ALLSTATE CORPORATION and THE ALLSTATE INSURANCE COMPANY Defendants. | : : : : : | Hon. John E. Jones III |

## **MEMORANDUM AND ORDER**

### September 15, 2011

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS;**

Pending before the Court is a Motion to Dismiss ("Motion") filed by Defendants The Allstate Corporation and The Allstate Insurance Company (collectively "Defendants" or "Allstate"). (Doc. 18). For the reasons that follow, the Motion shall be granted in part and denied in part.

**I.    PROCEDURAL HISTORY**

The plaintiffs, Paul A. Mattus and Paul A. Mattus Agency & Sons, Inc. (collectively "Plaintiffs" or "Mattus"), initiated the instant action by filing a complaint in the United States District Court for the Middle District of Pennsylvania on April 12, 2011. (Doc. 1). Defendants then filed a motion to

1

dismiss and a brief in support on June 14, 2011. (Docs. 5-6). Plaintiffs thereafter filed an amended complaint on June 30, 2011, (Doc. 16), within the time prescribed by Rule 15. On July 8, 2011, the Court issued an order denying as moot Defendants' motion to dismiss the original complaint. (Doc. 7). Defendants filed the instant Motion on July 18, 2011. (Doc. 18). The Motion has been fully briefed by the parties and is therefore ripe for disposition.

## II.　STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hamption Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the

2

pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* ---U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 120 S.Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at

3

555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint–the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 127 S. Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

**III. FACTUAL BACKGROUND**

Plaintiff Paul A. Mattus is a Pennsylvania resident previously employed by Allstate as an insurance agent. (Doc. 16 ¶¶ 13, 21). Mattus alleges that in November 1999, Allstate began a "group reorganization program" in which Allstate terminated

4

all employment contracts with their insurance agents and permitted each agent to continue its affiliation with Allstate as an independent contractor. (*Id.* ¶¶ 2, 22). Based on Allstate's representations that independent contractors would have an ownership interest in their businesses and would have an opportunity to grow their businesses in a more profitable way, Mattus agreed to continue his affiliation and executed a nonnegotiable Exclusive Agency Agreement ("Agency Agreement") with Allstate. (*Id.* ¶¶ 24-28). The Agency Agreement provided, *inter alia*, that Allstate would own all of the business produced under the agreement, and Allstate could terminate the agreement for cause immediately upon written notice to the agent. (Doc. 19, Ex. 2).

Allstate exercised its right to terminate the Agency Agreement with Mattus by a letter dated January 14, 2011. (Doc. 16 ¶ 34). Allstate cited Mattus's "failure to achieve business objectives established by the Company" as cause for his termination. (*Id.* ¶ 35). Unable to engage in any further business or sell his book of business to an approved buyer, Mattus was forced to turn over his book of business to Allstate for the company to allocate among its other insurance agents. (*Id.* ¶¶ 10, 36-37).

Mattus alleges that Allstate's actions in terminating his employment contract, and subsequently terminating the Agency Agreement, constituted a hostile take-

over of his business. (*Id.* ¶ 1). Plaintiffs' complaint alleges eight separate causes of action and seeks damages for breach of contract, unjust enrichment, fraudulent and negligent misrepresentation, intentional interference with current and prospective business relations, and intentional and negligent infliction of emotional distress. Defendants move to dismiss each count.

## IV. DISCUSSION

### A. Breach of Contract - Count I

Count one of the amended complaint alleges that in terminating the Agency Agreement, the Defendants violated the common law covenant of good faith and fair dealing implicit in all contracts. Specifically, Plaintiffs allege that Defendants failed to devise a rehabilitation program or inform Mattus of the right of an agent to appeal the termination as required by 40 P.S. §§ 241-46 ("Act 143").[1] Rather than bring a direct action for violation of the statute,[2] Plaintiffs contend that the

---

[1] Act 143 governs the termination of certain insurance agency contracts. Where applicable, Act 143 prohibits an insurer from terminating an agency contract without notice, an opportunity to rehabilitate the agent, or information regarding an agent's right to appeal the termination.

[2] By its terms, Act 143 does not apply to "business owned by the insurer and not by the agent, provided such insurer offers to continue such policies through another of its agents." 40 P.S. § 241.1(b)(1). Because the Agency Agreement specifically provides that Allstate, not the agent, "owns all of the business produced under the terms of this Agreement" and Allstate continued the policies through its other agents, Act 143 does not govern the Agency Agreement. *See also Clark v. Natali Ins. Agency, LLC*, 2008 Pa. Commw. Unpub. LEXIS 594 (Pa. Commw. Ct. Apr. 10, 2008) (holding that Act 143 does not apply to an agency agreement stating that the insurer owns all of the business produced under the agreement).

6

procedures set forth in Act 143 evince a legislative policy to protect both brokers and the insured in the termination of agency agreements, and failure to follow these procedures constitutes a breach of the implied covenant of good faith and fair dealing.

In ruling on the pending Motion, we accept as true Plaintiffs' factual assertion that Defendants terminated the Agency Agreement without following the procedures set forth in Act 143. However, we disagree that failure to comply with these procedures constitutes a breach of the implied covenant of good faith and fair dealing. Apparently cognizant that Act 143 does not govern the Agency Agreement *sub judice*,[3] Plaintiffs impermissibly attempt to incorporate the protections of Act 143 into the contract by equating such protections with the duty of good faith. We find this evasive maneuver unavailing.

---

[3] In paragraph 44 of the amended complaint, Plaintiffs allege "[t]he Agency Agreement is governed by the provisions of Act 143 *and/or* the intent of the General Assembly in enacting . . . Act 143" and "[f]ailure to comply with the provisions of Act 143 constitutes a breach of the Agency Agreement *and* the implied covenant of good faith and fair dealing" (emphasis added). However, the following paragraph states "[w]hether or not expressly applicable, Act 143 sets forth [legislative policy] which is subsumed in any Agency Agreement." (Doc. 16 ¶ 45). We also note that Plaintiffs' brief in opposition to the motion to dismiss does not dispute Defendants' claim that Act 143 does not apply, but rather states that the amended complaint "characterizes the application of Act 143 as an overarching policy that governs the termination of agency agreements." (Doc. 20 at 3). Read together, Plaintiffs appear to concede that Act 143 does not govern the Agency Agreement.

The covenant of good faith and fair dealing "involves an implied duty to bring about a condition or exercise discretion in a reasonable way." *USX Corp. v. Prime Leasing, Inc.*, 988 F.2d 433, 438 (3d Cir. 1993). However, implied covenants and express contractual terms are mutually exclusive; an implied covenant cannot override any provision expressly agreed to by the parties. *Id.* at 438-39. *See also Kimberg v. Univ. of Scranton*, 2007 U.S. Dist. LEXIS 7714 (M.D. Pa. Feb. 2, 2007). Here, the Agency Agreement sets forth specific termination procedures providing that the contract may be terminated by the Defendants upon ninety (90) days written notice to the Plaintiffs or immediately upon written notice to the Plaintiffs if the termination is for cause. Plaintiffs may not rely on the implied covenant of good faith and fair dealing to subvert this agreement. Therefore, absent an allegation that the Defendants violated an express term of the contract, we find that Plaintiffs have failed to state a claim for breach of contract. Defendants' motion to dismiss count one shall be granted.

### B. Unjust Enrichment - Count II

Unjust enrichment is an equitable doctrine that requires a defendant to pay the value of the benefit conferred by the plaintiff where retention of the benefit without payment would be unjust. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999). It is well settled under Pennsylvania law, however, that the

doctrine does not apply where a written or express contract exists between the parties. *Id. See also Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) ("The Supreme Court of Pennsylvania has concluded that 'the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract.'"); *Diener Brick Co. v. Mastro Masonry Contractor*, 885 A.2d 1034, 1041 (Pa. Super. Ct. 2005) ("It is true that '[a] cause of action for unjust enrichment may arise *only* when a transaction of the parties *not otherwise governed by an express contract* confers a benefit on the defendant to the plaintiff's detriment without any corresponding exchange of value.'"). In the case *sub judice*, Plaintiffs explicitly state in the amended complaint that the Agency Agreement, an express contract between the parties, governs their contractual relationship. Accordingly, we find that the existence of the Agency Agreement precludes application of the unjust enrichment doctrine. As Plaintiffs have failed to state a claim for unjust enrichment, Defendants' motion to dismiss count two shall be granted.

 **C.** **Fraudulent and Negligent Misrepresentation - Counts III and IV**

Plaintiffs allege that Allstate acted fraudulently or negligently in the performance and termination of the Agency Agreement. (Doc. 16 ¶¶ 70, 82). They also allege that prior to the termination of the employment relationship, Allstate

9

made representations, either fraudulently or negligently, regarding the benefits of employment as an independent contractor in order to induce the plaintiffs to enter into the Agency Agreement. (*Id.* ¶¶ 71, 83). Defendants argue that these allegations are deficient for two reasons: (1) the fraudulent and negligent misrepresentation claims are barred by the "gist of the action" doctrine, and (2) the allegation of fraud does not comply with the stringent pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. We will discuss each of Defendant's arguments in turn.

### 1. "Gist of the Action" Doctrine

The "gist of the action" doctrine operates to prevent a plaintiff from re-casting an ordinary breach of contract claim as a tort claim. The doctrine bars tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002). Pennsylvania courts have unquestionably recognized that the "gist of the action" doctrine bars claims for fraud in the performance of the contract, but the doctrine is generally not applicable to claims for fraud in the inducement of the contract.

*Advanced Tubular Prods., Inc. v. Solar Atmospheres, Inc.*, 149 Fed. Appx. 81 (3d Cir. 2005). This is because fraudulent statements made to induce the creation of the contract are often collateral to rather than interwoven with the terms of the contract itself. *See eToll*, 811 A.2d at 17. We believe the same rationale applies where the defendant acted negligently to induce the plaintiff to enter a contract.

Despite Plaintiffs' claims that "Allstate engaged in fraud in the performance and termination of the Agency Agreement" and "Allstate engaged in negligence in the performance and termination of the Agency Agreement," counts III and IV appear to allege fraud and negligence in the inducement of the contract. The statements allegedly made by Defendants extolling the virtues of the agreement were made prior to the formation of the contract and were designed to persuade Plaintiffs to continue their affiliation with Allstate. As such, these statements were collateral to, rather than interwoven with, the express terms of the Agency Agreement. Therefore, we find that the "gist of the action" doctrine does not bar the claims for fraud and negligence.

### 2. Sufficiency of the Pleading

To establish common law fraud, a plaintiff must prove: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the

11

misrepresentation; and (5) damage to the party defrauded as a proximate result." *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. Ct. 2006). Under both federal and Pennsylvania rules, fraud must be pled with particularity. Fed. R. Civ. P. 9(b); Pa. R. Civ. P. 1019(b). Defendants contend that Plaintiffs' complaint contains only vague references to a hostile take-over of Plaintiffs' business and the misrepresentations made by Defendants to further this goal. They argue that Plaintiffs failed to allege the timing or specific content necessary to survive a motion to dismiss. We disagree.

Plaintiffs twice state the specific representations allegedly made by the Defendants to induce Plaintiffs to enter into the Agency Agreement. Paragraph 24 of the amended complaint states, "Allstate informed its captive agents, including Mr. Mattus, that, if they chose to continue the relationship as independent contractors, each would have a major stake in his/her business, and would be able to grow their business in a more productive way." Paragraph 25 alleges that "Allstate represented to its captive agents, including Mr. Mattus, that in exchange for giving up vested employee benefits . . . they would have an ownership interest in their book of business." Although these statements are not technically false with respect to independent contractor relationships generally, if, as alleged by Plaintiffs, Defendants engaged in a scheme to remove older agents like Mr. Mattus, these

12

statements are false with respect to this employment agreement. Accordingly, because we accept as true all well-pleaded facts in the complaint, we find that the complaint states a plausible claim for fraud. Defendants' motion to dismiss counts three and four shall be denied.

### D. Intentional Interference with Current and Prospective Business Relations and Intentional and Negligent Infliction of Emotional Distress - Counts V-VIII

Plaintiffs allege four additional tort claims including: (1) intentional interference with current business relations, (2) negligent interference with current business relations, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress. Defendants argue that each of these claims is barred by the "gist of the action" doctrine. We agree.

As discussed *supra*, the "gist of the action" doctrine is designed to maintain the conceptual separation between tort and contract claims. *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). The mere existence of a contractual relationship between the parties does not automatically prevent a party's pursuit of a tort claim. However, for a tort claim to survive a motion to dismiss, the plaintiff must allege that the parties' obligations are defined not by the terms of the contract but by "the larger social policies embodied in the

law of torts." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103-04 (3d Cir. 2000) (quoting *Bash v. Bell Tel. Co.*, 601 A.2d 825, 830 (Pa. Super Ct. 1992). Thus, it may be said that the "gist of the action" against the defendant must be a tort action with the contract merely collateral to the relationship. *Bash*, 601 A.2d at 829.

Examining the complaint with the foregoing principles in mind, we conclude that counts five through eight merely seek to recover damages flowing from the alleged breach of contract claim in count one. The harm caused to Mattus as a result of the alleged contract damages, interference with business relations, and emotional distress follows directly from termination of the Agency Agreement, instead of from an independently actionable tort to which Plaintiffs' breach of contract claim can be considered merely collateral. The Agency Agreement, not the law of torts, governs the rights and duties of each party herein, and Plaintiffs have failed to allege that Defendants violated any express agreement. Accordingly, we find that the "gist of the action" *sub judice* is a contract claim, and Plaintiffs have failed to state a claim for tortious interference with current or prospective business relations and intentional or negligent infliction of emotional distress. Defendants' motion to dismiss counts five through eight shall be granted.

## V. CONCLUSION

For the reasons set forth in this memorandum, Defendants' motion shall be granted in part and denied in part. Counts I, II, V, VI, VII, and VIII shall be dismissed without leave to amend. Defendants' motion to dismiss counts III and IV shall be denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART** to the following extent:

    a. It is **GRANTED** to the extent that counts I, II, V, VI, VII, and VIII of the amended complaint (Doc. 16) are **DISMISSED** without leave to amend.

    b. It is **DENIED** to the extent that counts III and IV of the amended complaint (Doc. 16) shall remain.

s/ John E. Jones III  
John E. Jones III  
United States District Judge
